## GEHL v. HEBE CO.

(Circuit Court of Appeals, Seventh Circuit. July 20, 1921.)

### No. 2900.

1. **Trade-marks and trade-names and unfair competition ⬤�篆59(5)—"Meje" held infringement of "Hebe."**
   The use of the trade-name "Meje," as applied to a compound of skimmed milk and vegetable fat, infringed the trade-name of "Hebe," applied to the same compound.

2. **Trade-marks and trade-names and unfair competition ⬤�G93(1)—Proof of confusion of customers unnecessary where names suggest it.**
   In action for infringement of trade-name, evidence of actual confusion on the part of customers is not necessary, where the words themselves suggest it.

3. **Trade-marks and trade-names and unfair competition ⬤⟹55—Good faith in selecting infringing trade-name no bar to relief.**
   Good faith in choosing a trade-name will not bar one already having a similar trade-name from proper relief, if there is in fact infringement.

4. **Good will ⬤⟹5—Trade-marks and trade-names and unfair competition ⬤⟹ 34—Assignment held to transfer business as well as good will.**
   An assignment reading that, whereas H. Company is desirous of acquiring the trade-mark and "all the business and good will associated therewith," now therefore in consideration, etc., the C. Company has sold, assigned, and transferred to the H. Company the entire right, title, and interest in and to said trade-mark and certificate of registration, "together with all the good will of the business connected with said trade-mark, picture and certificate of registration," *held* intended to convey the business as well as the good will and trade-mark, under 33 Stat. 727, § 10 (Comp. St. § 9495).

5. **Trade-marks and trade-names and unfair competition ⬤⟹98—Good faith in selection of infringing trade-name does not affect actual damage.**
   The fact that one using an infringing trade-name acted in good faith in its selection and use could have a bearing on the question of punitive damages, but would not affect the proposition of actual damage, if any, occasioned by use of the name.

6. **Trade-marks and trade-names and unfair competition ⬤⟹100—Reference decree held to leave open liability for infringement.**
   In an action for damages for infringement of trade-name, an interlocutory decree referring the cause to a master for an accounting of profits and damages *held* to leave wholly open the nature and extent of defendant's pecuniary liability growing out of his ascertained infringement.

Appeal from the District Court of the United States for the Eastern District of Wisconsin.

Action by the Hebe Company against John P. Gehl. Decree for plaintiff, and defendant appeals. Affirmed.

⬤⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

William H. Churchill, of Milwaukee, Wis., and Bennison F. Bartel, of Chicago, Ill., for appellant.

C. P. Goepel, of New York City, for appellee.

Before ALSCHULER, EVANS and PAGE, Circuit Judges.

ALSCHULER, Circuit Judge. The appeal is from a decree finding infringement by appellant of appellee's trade-mark. The Sheboygan Evaporated Milk Company in 1915, registered the trade-mark "Hebe" for "a milk product evaporated." January, 1916, the trademark and business was assigned to the Pacific Coast Condensed Milk Company, and in May, 1918, there was an assignment to appellee by the Pacific Coast Condensed Milk Company under its changed name of Carnation Milk Products Company. In 1915, and perhaps earlier, the milk product, which is a compound of skimmed milk and vegetable fats, was put upon the market under the trade-mark "Hebe," sales of which have each succeeding year largely increased, having been advertised extensively and at large expense, so that during the time of the alleged infringement the trade-mark was of considerable value.

Appellant had long experience in manufacturing evaporated milks and in 1917 began to make and sell a milk compound substantially like that sold under the name of "Hebe." He first called it "Carolene," but for certain business reasons abandoned that name and sought another one, employing others to assist him in the selection. He knew of "Hebe," since that had become the commercially leading brand for a milk compound, being the only one which had been widely advertised. While casting about for a name he sold and delivered to jobbers in August, 1919, 20,000 cases unbranded, but somewhat later he fixed upon the name "Meje," and sent out labels bearing that name, which were attached to the unbranded packages.

The record is singularly free from proof of unfair competition and trade practice, beyond the mere fact of the resemblance of the two names. There is no contention of simulation of labels or the employment by appellant of improper means to secure trade aside from the matter of these names.

[1, 2] A question of similarity of trade-names as applied to a particular product must of necessity be largely a matter of impression. From absolute copy of a name to one which is radically and essentially different there are names innumerable, with varying degrees and shades of difference; and it would be impossible to lay down any general line of cleavage between infringing and noninfringing names. While the mind may readily conceive many names other than this which would more nearly approximate that of "Hebe," we are of the impression that "Meje" as applied to the same product is an approximation sufficiently close to be deemed an infringement. The two vowels are the same in both, and most persons would pronounce both of these long, accenting the first syllable of each word. The interest of the average consumer in either of the brands is probably not such that he would charge his mind with the precise form and sound of the word. The general form and sound of the words, having marked similarity, would strongly suggest the likelihood of confusion. Although there was here

no evidence of actual confusion on the part of customers, this is not easily available, nor indeed necessary where the words themselves suggest it.

[3] There was evidence to show how carefully appellant selected the name, how he employed others to formulate a suitable name and to search the records for conflicting names, with the result that he was advised there was nothing registered which was in conflict. A Danish word "mejeri," meaning dairy, was stated as the origin of the name. But appellant's entire good faith in choosing a name would not, of course, bar appellee of its proper relief, if nevertheless it were concluded that this infringed. With so vast a field to choose from, and with appellee's trade-name so well known to appellant, the choice of this name with like number of letters and syllables, like vowels of like place and sound, and with same accent, cannot be wholly justified.

[4] The assignment to appellee is attacked on the ground that by it the business of the assignor was not assigned. The assignment states that whereas the Hebe Company is desirous of acquiring the trademark and "all the business and good will associated therewith," now therefore in consideration, etc., the Carnation Milk Products Company has sold, assigned, and transferred to the Hebe Company the entire right, title, and interest in and to said trade-mark and certificate of registration, "together with all the good will of the business connected with said trade-mark Hebe, picture and certificate of registration." The granting part of the assignment does not specifically mention the business. While this, in view of the recital, is probably an inadvertent omission, there would seem to be much difficulty in transferring of the good will of a business wholly apart from the business itself. The good will would not be transferred if the grantor remained at liberty to carry on and contend for the very business as to which the good will of the former owner had by his conveyance passed to another.

As to assignment of registered trade-marks the statute provides:

"Every registered trade-mark * * * shall be assignable in connection with the good will of the business in which the mark is used." 33 St. L. 727, c. 592, § 10 (Comp. St. § 9495).

While it may be that in contemplation of the statute that would not be deemed an assignment "in connection with the good will of the business" which left the assignor free to continue the business as before the assignment, the assignment here is in the form which embodied the statutory provisions, and there is no evidence whatever that since the assignment the assignor continued the business or has asserted any right to do so. We consider the assignment sufficient.

[5, 6] Appellant insists that there was error in referring the cause to a master for an accounting of profits and damages, asserting there was no proof of fraud in the employment of the name "Meje," and that it appears from the evidence that appellee lost no trade through anything that appellant had done, but that, on the contrary, appellee could not fill its orders, and that there is no evidence of sales by appellant.

If it be assumed, as under the evidence it may not be improper to assume, that appellant acted in good faith in its selection and use of

the name "Meje," this would, of course, have a bearing on the question of punitive damages, but would not affect the proposition of actual damage, if any, which the evidence may disclose was occasioned to appellee by appellant's use of this name on its product. Sales were shown of those goods to which appellant's labels were attached before they reached the consumers.

It is apparent however, that in its interlocutory decree the court did not undertake finally to pass upon the question of the kind and extent of defendant's liability, but left this open. While the decree provides that defendant pay over profits and damages suffered by appellee, it states that this is "without prejudice to defendant's rights to raise and contest any issue respecting liability or decree of liability for either profits or damages," and then refers the cause to the master to hear proofs in relation to profits and damages, and to report conclusions. We regard this decree as leaving wholly open the nature and extent of appellant's pecuniary liability growing out of its ascertained infringement.

The decree is affirmed.